# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MARK SMITH,
    Petitioner,

    vs.

WARDEN, PICKAWAY
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:18-cv-335

Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Pickaway Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his drug convictions. (Doc. 1). This matter is before the Court on the petition (Doc. 1) and respondent's return of writ (Doc. 7), to which petitioner has replied (Doc. 10).

For the reasons stated below, the petition should be denied.

## I. PROCEDURAL HISTORY

### State Trial Proceedings and Direct Appeal

On September 22, 2015, a Lawrence County, Ohio, grand jury returned a seven-count indictment charging petitioner with five counts of trafficking in heroin, one count of trafficking in cocaine, and one count of trafficking in drugs (Oxycodone). (Doc. 6, Ex. 1). The trafficking-in-heroin charges included three fourth-degree felonies, one second-degree felony, and one fifth-degree felony. (Doc. 6, Ex. 1, PageID 34-36). The case proceeded to a jury trial. On February 5, 2016, the jury found petitioner guilty of the five heroin-trafficking charges but not guilty of a cash-forfeiture specification accompanying one of the heroin-trafficking charges and not guilty of the cocaine- and Oxycodone-trafficking charges. (Doc. 6, Ex. 8). On February 16, 2016, petitioner was sentenced to an aggregate term of twelve years in the Ohio Department of Corrections and to pay a $16,250 fine. (Doc. 6, Ex. 9).

Petitioner, through appellate counsel, was granted leave to file an untimely appeal to the Ohio Court of Appeals. (Doc. 6, Ex. 16). Thereafter, petitioner successfully moved to dismiss his appellate counsel and was granted a new appellate attorney. (Doc. 6, Exs. 17, 18). Petitioner raised the following three assignments of error on appeal:

1. The continuation of Appellant Smith's trial beyond the two hundred seventy-day time limit violates his right to a speedy trial pursuant to R.C. 2945.71 through 2945.73. Additionally, this failure to provide a speedy trial is a violation of Smith's fundamental rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article 1 of the Ohio Constitution.

2. Appellant Smith's right to the effective assistance of counsel was violated when his attorney failed to argue that he was denied his right to a speedy trial. Additionally, Smith was denied the effective assistance of counsel when his attorney failed to file an affidavit of indigency prior to sentencing resulting in the imposition of excessive fines. U.S. Const. Amends. V, VI, XIV; Ohio Const. Art. 1 §§ 9, 10, 16.

3. Appellant Smith's conviction was not supported by sufficient credible evidence and was against the manifest weight of the evidence. Thus, Smith was deprived of his right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, § 10 of the Ohio Constitution.

(Doc. 6, Ex. 19). On September 15, 2017, the Ohio Court of Appeals overruled all of petitioner's claims, except that it sustained in part his second assignment of error and remanded the case to the trial court to determine whether petitioner was indigent and unable to pay the mandatory fines. (Doc. 6, Ex. 22, at PageID 161).

## Ohio Supreme Court

On December 5, 2017, petitioner filed a pro se notice of appeal out of time and a motion for leave to file a delayed appeal, which the Ohio Supreme Court denied. (Doc. 6, Exs. 23-25). Petitioner did not seek a writ of certiorari in the United States Supreme Court.

**Trial Court Remand**

In the meantime, petitioner, through new counsel, filed a motion to set aside the fines imposed by the trial court in the original sentencing entry. (Doc. 6, Ex. 26). On October 23, 2017, the trial court filed an amended judgment entry waiving petitioner's fines but otherwise reinstating petitioner's twelve-year prison sentence. (Doc. 6, Ex. 27). Petitioner did not appeal.

**Federal Habeas Corpus**

On April 23, 2018, petitioner commenced the instant federal habeas corpus action. (Doc. 1). Petitioner raises the following three grounds for relief:

> **GROUND ONE**: Petitioner was denied [a] speedy trial.
>
> **Supporting Facts:**  The continuance of Petitioner's trial beyond the two hundred seventy-day limit violates his right to speedy trial.
>
> **GROUND TWO**:  Ineffective assistance of counsel[.]
>
> **Supporting Facts**:  Attorney failed to argue petitioner was denied his right to a speedy trial.  Additionally, petitioner was denied effective assistance when his attorney failed to file an affidavit of indigency resulting in excessive fines.
>
> **GROUND THREE**:  Petitioner's conviction was not supported by sufficient credible evidence and was against the manifest weight of the evidence.

(Doc. 1, at PageID 5-8).

Respondent has filed a return of writ in opposition to the petition. (Doc. 7). According to respondent, petitioner's grounds for relief are procedurally defaulted or without merit. Petitioner has filed a traverse. (Doc. 10).

## II. THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by petitioner to the state courts is set forth in 28 U.S.C. § 2254(d).

Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated

on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the United States
> Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at

a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v.

Taylor,* 529 U.S. 362, 412–13 (2000)). "A state court's adjudication only results in an

'unreasonable application' of clearly established federal law when 'the state court identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies

that principle to the facts of the prisoner's case.'" *Id.* at 599–600 (quoting *Williams,* 529 U.S. at

413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600.

As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's
> standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179
> L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record
> before the state court where a claim has been adjudicated on the merits by the state
> court). It is not enough for us to determine that the state court's determination is
> *incorrect*; to grant the writ under this clause, we must hold that the state court's

4

> determination is *unreasonable*. . . . This is a "substantially higher threshold.". . .
> To warrant AEDPA deference, a state court's "decision on the merits" does not
> have to give any explanation for its results, *Harrington v. Richter*, __ U.S. __, 131
> S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant
> Supreme Court cases, as long as "neither the reasoning nor the result of the state-
> court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362,
> 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court extended its ruling in *Harrington* to hold that

when a state court rules against a defendant in an opinion that "addresses some issues but does

not expressly address the federal claim in question," the federal habeas court must presume,

subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the

"restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, 568 U.S. 289, 292

(2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete

bar on federal court relitigation of claims already rejected in state proceedings" and "preserves

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree

that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v.*

*Richter*, 562 U.S. 86, 102 (2011). In other words, to obtain federal habeas relief under that

provision, the state prisoner must show that the state court ruling on the claim presented "was so

lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim

under § 2254(d), the federal habeas court must apply the Supreme Court precedents that

controlled at the time of the last state-court adjudication on the merits, as opposed to when the

conviction became "final." *Greene v. Fisher*, 565 U.S. 34, 38–40 (2011); *cf. Otte*, 654 F.3d at

600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene,* 565 U.S. at 38, the Court explained:

> [W]e held last term in *Cullen v. Pinholster,* 563 U.S. _, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.,* at _, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.,* at _, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte,* 654 F.3d at 600 (quoting *Landrum v. Mitchell,* 625 F.3d 905, 914 (6th Cir. 2010)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

**A. Ground One Should Be Denied.**

In Ground One, petitioner asserts that he was denied the right to a speedy trial. Respondent argues that petitioner procedurally defaulted Ground One by failing to (1) raise the speedy-trial issue in the trial court, (2) present it in the Ohio Court of Appeals as one of federal constitutional magnitude, and (3) present it to the Ohio Supreme Court on direct review. (Doc. 7, at PageID 586-89). Alternatively, respondent asserts that Ground One fails on the merits.

(Doc. 7, at PageID 590-97). In his traverse, petitioner contends that he fairly presented his federal speedy-trial claim to the Ohio Court of Appeals. (Doc. 10, at PageID 622). Further, although petitioner concedes that counsel did not raise a speedy-trial claim in the trial court, petitioner asserts in Ground Two of his petition that he was denied the effective assistance of trial counsel because counsel failed to object to the violation of petitioner's right to a speedy trial. (Doc. 1, at PageID 7). Petitioner further asserts that his prison failed to promptly process his outgoing legal mail causing his untimely notice of appeal to the Ohio Supreme Court. (Doc. 7, at PageID at 624).

"'[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits,' especially where the procedural-default issue is 'complicated' and 'is unnecessary to [the] disposition of the case.'" *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Ground One does not warrant federal habeas relief for the reasons below. The undersigned therefore elects to overlook any procedural default of Ground One.

As an initial matter, because the federal habeas court only has jurisdiction to consider whether petitioner's confinement violates the Constitution, laws or treaties of the United States, petitioner is unable to prevail on any claim of error under Ohio's speedy-trial statute or state case law interpreting the Ohio statute. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). *Cf. Wilcher v. Rose*, No. 95-3835, 1996 WL 262951, at *1 (6th Cir. May 16, 1996) (citing *Hutchison v.*

*Marshall*, 744 F.2d 44, 46 (6th Cir. 1984)) (holding that "[t]he district court properly found that [the habeas petitioner's] speedy trial claim was not cognizable insofar as it was based solely on state law"); *Herron v. Kelly*, No. 1:10-cv-1783, 2013 WL 3245326, at *5 (N.D. Ohio June 26, 2013) (holding that the petitioner's speedy trial claim, which was "premised on his interpretation of his state statutory rights," did not constitute a "cognizable claim for federal habeas relief"); *Younker v. Warden, Chillicothe Corr. Inst.*, No. 1:10-cv-875, 2011 WL 2982589, at *10 (S.D. Ohio June 24, 2011) (Bowman, M.J.) (Report & Recommendation) (and cases cited therein) (holding that "to the extent petitioner's arguments for relief are based solely on a violation of Ohio's speedy trial statute or other error under Ohio law, he does not present a cognizable federal constitutional claim subject to review in this proceeding"), *adopted*, 2011 WL 2976790 (S.D. Ohio July 22, 2011) (Dlott, J.). The Court only has jurisdiction to consider whether the alleged pre-trial delay amounted to a violation of petitioner's federal constitutional speedy-trial right.

The Sixth Amendment guarantees a defendant the right to a speedy trial, which involves a fact-intensive inquiry requiring the balancing of (1) "whether [the] delay before trial was uncommonly long;" (2) "whether the government or the criminal defendant is more to blame for the delay;" (3) "whether, in due course, the defendant asserted his right to a speedy trial;" and (4) "whether he suffered prejudice as the delay's result." *Doggett v. United States,* 505 U.S. 647, 651, 655 (1992); *Barker v. Wingo,* 407 U.S. 514, 530 (1972); *see also Wilson v. Mitchell,* 250 F.3d 388, 394 (6th Cir. 2001).

"[T]o trigger a speedy trial analysis" under this four-factor balancing test, the defendant must demonstrate that "the interval between accusation and trial has crossed the threshold

dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651-52; *Barker*, 407 U.S. at 530. "The length of the delay is a threshold requirement. If the length of the delay is not 'uncommonly long,' then judicial examination ends." *Maples v. Stegall*, 427 F.3d 1020, 1025-26 (6th Cir. 2005) (quoting *Doggett*, 505 U.S. at 652). While delays approaching one year are considered presumptively prejudicial depending on the seriousness of the charge, *Doggett*, 505 U.S. at 652, n.1; *Maples*, 427 F.3d at 1026, those of a lesser duration are not per se excessive. *See United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (six-and-one-half-month delay not presumptively prejudicial). *See also United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) (delay of five months not per se excessive).

In this case, petitioner was arrested on September 10, 2015 (*see* Doc. 6-1, Transcript, at PageID 332), and brought to trial on February 4, 2016 (*see* Doc. 6, Ex. 8, at PageID 57), 146 days or approximately five months later. The approximate five-month period of delay is not presumptively prejudicial. *See Howard*, 218 F.3d at 564.[1]

Even assuming, *arguendo*, that the delay in this case is presumptively prejudicial, an examination of the remaining three speedy-trial factors further demonstrates that no federal constitutional speedy-trial violation occurred in this case. First, petitioner did not assert a speedy-trial violation at trial; this factor therefore weighs against him. Moreover, petitioner has

---

[1]Moreover, "in calculating the length of the delay, only those periods of delay attributable to the government or the court are relevant to [a petitioner's] constitutional claim." *Howard*, 218 F.3d at 564 (citing *Barker*, 407 U.S. at 529; *White*, 985 F.2d at 275). In calculating the amount of time fairly attributable to the State in the context of petitioner's claim of ineffective assistance of trial counsel (*see* discussion of Ground Two below), the state appellate court determined that only fifty-one days of the 146-day delay were properly attributable to the State. (*See* Doc. 6, Ex. 22, at PageID 152-56). Although this Court need not reach that issue here, inasmuch as the 146-day period between petitioner's arrest and trial is itself not presumptively prejudicial, it appears that the period of delay in this case is considerably less than 146 days for speedy-trial purposes.

9

not made any showing of how he was prejudiced by the delay. Petitioner has not alleged, much

less demonstrated, any impairment to his defense, nor that any witness became unavailable or

that any other evidence was lost because of the delay. *See Barker*, 407 U.S. at 532. Petitioner

has likewise failed to demonstrate prejudice on account of abnormal anxiety or oppressive pre-

trial incarceration. *See id.* Furthermore, the delay alleged by petitioner is generally insufficient

to demonstrate prejudice. *See United States v. Schreane*, 331 F.3d 548, 559 (6th Cir. 2003)

(collecting cases and noting that "[w]hen prejudice has been found, the government's delay has

typically been shockingly long") (citing *Doggett*, 505 U.S. at 657 (six years); *Brown*, 169 F.3d at

351 (five and one-half-years); *Untied States v. Graham*, 128 F.3d 372, 376 (6th Cir. 1997) (eight

years)).

Ground One does not warrant habeas corpus relief.

**B. Ground Two Should Be Denied.**

In Ground Two, petitioner asserts that his trial counsel was ineffective by failing to (1)

raise a speedy-trial challenge, and (2) file an affidavit of indigency prior to sentencing to avoid

the imposition of mandatory fines. (Doc. 1, at PageID 7). Respondent argues that petitioner

procedurally defaulted Ground Two by failing to present it to the Ohio Supreme Court and,

alternatively, that Ground Two fails on the merits. (Doc. 7, at PageID 597-606). Without

deciding the procedural issue, *see Mahdi*, 522 F.3d at 635, the undersigned recommends denying

Ground Two on the merits.

The Supreme Court precedent setting forth the clearly-established federal legal principles

applicable to Ground Two is *Strickland v. Washington*, 466 U.S. 668 (1984). In order to

demonstrate that counsel's performance was constitutionally ineffective, petitioner must show:

(1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Id.* at 687. Under the first prong of the *Strickland* test, petitioner must show "a reasonable probability that, but for his counsel's unprofessional errors, the result of the criminal proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Id.* (citing *Strickland*, 466 U.S. at 694). A court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. 466 U.S. at 697.

The Ohio Court of Appeals, the last state court to issue a reasoned decision on the merits of petitioner's ineffective-assistance-of-trial-counsel claim, denied it as follows:[2]

> {¶ 19} Smith contends that his trial counsel was ineffective for not raising his speedy-trial claim at or before the commencement of trial.
>
> {¶ 20} The Sixth Amendment to the United States Constitution (which is made applicable to the states through the Due Process Clause of the Fourteenth Amendment) and Article I, Section 10 of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial; this guarantee is implemented by R.C. 2945.71, which provides specific statutory time limits within which a person must be brought to trial. *State v. Blackburn*, 118 Ohio St.3d 163, 2008-Ohio-1823, 887 N.E.2d 319, ¶ 10. R.C. 2945.71(C)(2) "requires that a person against whom a felony charge is pending shall be brought to trial within 270 days after the person's arrest." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 81. "For purposes of calculating speedy-trial time, 'each day during which the accused is held in lieu of bail on the pending charge shall be counted as three days.'" *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, ¶ 15, quoting R.C. 2945.71(E). "Thus, subject to certain tolling events, a jailed defendant must be tried within 90 days." *Id.*
>
> {¶ 21} Smith was jailed on September 10, 2015, and his trial commenced 146 days later for speedy-trial computation purposes, on February 4, 2016. Because this

---

[2] Under 28 U.S.C. § 2254(e)(1), the state courts' factual findings are presumed correct unless the petitioner rebuts the presumption by "clear and convincing evidence." *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

exceeded the 90–day period, Smith presents a prima facie speedy-trial violation. *See, e.g., State v. Squillace*, 10th Dist. Franklin No. 15AP-958, 2016-Ohio-1038, ¶ 14. Once a defendant establishes a prima facie case for dismissal, the burden shifts to the state to prove that the time was sufficiently tolled to extend the period. *Id.*; *see also State v. Anderson*, 4th Dist. Scioto No. 15CA3696, 2016-Ohio-7252, ¶ 19.

{¶ 22} "R.C. 2945.72 contains an exhaustive list of events and circumstances that extend the time within which a defendant must be brought to trial." *Ramey* at ¶ 24. The pertinent tolling provisions here are R.C. 2945.72(E) ("Any period of delay necessitated by reason of a * * * motion, proceeding, or action made or instituted by the accused") and (H) ("The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion").

{¶ 23} A demand for discovery or a bill of particulars constitutes a tolling event under R.C. 2945.72(E). *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, 781 N.E.2d 159, syllabus. Courts have generally interpreted 30 days to constitute a reasonable period to respond to requests for discovery or a bill of particulars. *See, e.g., State v. Shabazz*, 8th Dist. Cuyahoga No. 95021, 2011-Ohio-2260, ¶ 26 ("A defendant's demand for discovery or a bill of particulars tolls the speedy trial period for a 'reasonable time,' which this court has interpreted to mean 30 days"); *State v. Ford*, 180 Ohio App.3d 636, 2009-Ohio-146, 906 N.E.2d 1155, ¶ 8–11 (1st Dist.) (holding that 30 days was a reasonable time for the state to respond to a defendant's request for a bill of particulars and discovery, absent a showing of special circumstances justifying a longer delay); *State v. Sheline*, 4th Dist. Ross No. 15CA3511, 2016-Ohio-4794, ¶ 11, citing *State v. Hucks*, 4th Dist. Ross No. 15CA3488, 2016-Ohio-323, ¶ 24 ("in *Hucks*, we observed that a request for discovery tolls the speedy-trial time to give the State a reasonable opportunity to respond and that many courts have interpreted a reasonable time to mean 30 days").

{¶ 24} Smith filed a demand for discovery and a request for a bill of particulars on October 2, 2015. The state provided an answer to Smith's demand for discovery five days later, on October 7, and it filed a bill of particulars 53 days after Smith's request, on November 24. Smith argues that based on *State v. Palmer*, 11th Dist. Portage No. 2004-P-0106, 2005-Ohio-6710, the state should have responded to his request for a bill of particulars within the same five-day period it took to respond to his demand for discovery. But that court merely held that the state's delay of 79 days in responding to the defendant's request for a bill of particulars under the circumstances was unreasonable, and its decision was ultimately reversed on other grounds on appeal. *See State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, paragraph one of the syllabus ("The failure of a criminal defendant to respond within a reasonable time to a prosecution request for reciprocal

discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D)"). We thus find *Palmer* has little value to Smith.

{¶ 25} Therefore, we conclude 30 days of the time spent by the state to respond to Smith's requests tolled the speedy-trial period, leaving 116 days elapsed before his trial commenced.

{¶ 26} Second, R.C. 2945.72(H) tolls the time for "any continuance granted on the accused's own motion." The court initially scheduled trial for December 7, 2015, 87 days after his September 10 arrest, which was within the 90–day speedy-trial period in R.C. 2945.71(C) and (E) even without accounting for the time chargeable to Smith for responding to his discovery requests. And on December 1, 2015, Smith's initial appointed trial counsel filed a motion to withdraw because of Smith's refusal to cooperate and lack of confidence in him. This necessitated a hearing before the trial court on December 7, where this exchange occurred:

DEFENDANT: The problem is ever since he has been on my case he's never did nothing for me. In my favor at all, nothing, nothing, nothing! When I say nothing I mean absolutely nothing. * * *

COURT: It sounds to me like you wouldn't object if I granted his motion to resign and we put another lawyer on it.

DEFENDANT: I sure wouldn't cause I was going to fire him [if] you hadn't had. * * * Six weeks ago he could have started trying to prepare a case. He never tried to prepare a case. He wanted to wait till the last week to try and prepare a case. Can't prepare no case in no week. And I know you can't. I know you can't because I asked motions I wanted to be filed. I told him this is a motion that you need to file. Did he file one? Not one. Not one.

COURT: Well I will accept Mr. Davenport's motion. I'll allow him to resign from the case. I will go through the list of lawyers who take appointments and see if I can't get another one today for you and see if I can't set up a meeting so that they can start. Now we aren't going to be able to try the case tomorrow. It's going to take time for your new lawyer to get...

DEFENDANT: I don't care how long it takes.

COURT: Allright.
DEFENDANT: I'm not going to taking no lawyer that is just going to come up here and just think they are going to sell me up a creek without a paddle. * * *

13

COURT: I will see if I can't find another attorney who will take the appointment for your case. * * * I see about the same six or seven week in and week out in here to try all the cases. Um, and I'll have that person get in touch with you and I'll even send a copy of the paper work to you as to who that will be so you will know it is before somebody comes over there and says okay, I'm your lawyer, tell me everything you remember about this case. Alright, that will be the ruling of the court and I will go to work on this with my [as]signment commissioner. * * *

[Sic.]

{¶ 27} The trial court appointed new trial counsel for Smith on December 7, 2015, the same day as the original trial date, and scheduled a new trial for February 4, 2016.

{¶ 28} Smith concedes that the six days from when his first trial counsel filed a motion for withdrawal to when his new counsel was appointed tolled the speedy-trial period. However, he disagrees with the state's contention that the remaining 59 days between the appointment of new counsel and the commencement of his rescheduled trial were also tolled. We disagree.

{¶ 29} Although counsel's motion to withdraw was not an explicit request for a continuance, it necessitated the cancellation of the December 7 scheduled trial and the rescheduling to a later date. Where a trial court must reschedule a trial because of a motion of the accused, regardless of whether it is styled as a motion for a continuance, the entire time between the motion and the rescheduled trial date is a delay attributable to a motion filed by the accused under R.C. 2945.72(E). *State v. Phillips*, 4th Dist. Highland No. 09CA13, 2009-Ohio-7069, ¶ 25. Smith's reliance on *State v. Bailey*, 4th Dist. Ross No. 14CA3461, 2015-Ohio-5483, ¶ 32, to claim that the speedy-trial period started again after the trial court appointed new counsel for him on December 7, is misplaced because the appointment of new counsel in that case did not necessitate the rescheduling of the trial date.

{¶ 30} Third, the rescheduled date constituted a "reasonable continuance granted other than upon the accused's own motion" under R.C. 2945.72(H). Generally, "[w]hen sua sponte granting a continuance under R.C. 2945.72(H), the trial court must enter the order of continuance and the reasons therefor by journal entry prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing a defendant to trial." *State v. Mincy*, 2 Ohio St.3d 6, 441 N.E.2d 571 (1982), syllabus. Although the trial court did not comply with *Mincy* here, "an appellate court may affirm a conviction challenged on speedy-trial grounds even if the trial court did not expressly enumerate any reasons justifying the delay when the reasonableness of the continuance is otherwise affirmatively demonstrated by the record." *Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, 971 N.E.2d 937, at ¶ 33.

{¶ 31} The reasonableness of the continuance from the December 7, 2015 (date that Smith's new counsel was appointed), until February 4, 2016 (when the trial commenced) is affirmatively demonstrated by the record. At the proceeding on the motion to withdraw, Smith noted that an attorney could not prepare his case in a week and that he was dissatisfied with his first attorney because counsel had not filed motions he had requested. When the trial court advised him that it would take time for his new lawyer to be prepared to represent him at trial, Smith specifically stated that he did "not care how long it takes." Smith appeared to acquiesce in the trial court's statement that it would take six or seven weeks to reschedule his trial. In fact, in substitute counsel's motion for extraordinary fees, which the trial court granted, he represented that these additional fees were warranted "[d]ue to the amount of time necessary to prepare for a trial with such serious charges along with the fact that extra time was necessary to investigate this matter [and] extra time was necessary to prepare this case for trial." . . . Under these circumstances the record affirmatively demonstrates that the continuance of the trial from the date of the appointment of new counsel until the rescheduled trial was reasonable in both purpose and length. *See Ramey* at ¶ 33; *State v. Carr*, 4th Dist. Ross No. 12CA3358, 2013-Ohio-5312, ¶ 31.

{¶ 32} Therefore, the speedy-trial period was also tolled from December 1, 2015, the date his first counsel filed his motion to withdraw, until February 4, 2016, the date of the rescheduled trial. When these additional 65 days are tolled, the trial was held within 51 days after his arrest, i.e., he was tried within the applicable 90–day period. Therefore, there was no speedy trial violation and we reject Smith's first assignment of error.

{¶ 33} Moreover, because a motion to dismiss based on a claimed speedy-trial violation would have been meritless, his trial counsel did not provide ineffective assistance of counsel by failing to file a motion on this basis. *See State v. Cottrell*, 4th Dist. Ross Nos. 11CA3241 and Ross Nos. 11CA3242, 2012-Ohio-4583, ¶ 20 ("Because Cottrell's statutory speedy trial rights were not violated, a motion to dismiss on that basis would have failed. The law does not require counsel to take a futile act, so trial counsel's failure to file a motion to dismiss was not deficient"). We overrule this part of Smith's second assignment of error.

(Doc. 6, Ex. 22, at PageID 149-156) (footnote omitted).

To the extent that petitioner's speedy-trial claim is premised on Ohio law, it is well-settled that federal habeas courts generally are bound by the state court's interpretation of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68; *Mullaney v.*

*Wilbur*, 421 U.S. 684, 691 (1975)). The highest court of the state is the final arbiter of the state-law issue; therefore, "[w]hen it has spoken, its pronouncement is to be accepted by federal courts as defining state law." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940); *see also Hicks v. Feiock*, 485 U.S. 624, 629-30 & n.3 (1988) (applying *West* standard in federal habeas case). "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is the datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West*, 311 U.S. at 237 (and cases cited therein); *see also Hampton v. United States*, 191 F.3d 695, 701 (6th Cir. 1999) (citing *Hicks*, 485 U.S. at 630 n.3); *cf. Lawler v. Fireman's Fund. Ins. Co.*, 322 F.3d 900, 903 (6th Cir. 2003).

 The state appellate court engaged in a detailed analysis of the circumstances in this case constituting tolling events under Ohio Rev. Code § 2945.72. Petitioner has not cited any authority that convinces the undersigned that the Ohio Supreme Court would decide the tolling issue otherwise and, accordingly, this federal Court is bound by the state court's considered judgment on the tolling issue. *Hicks*, 485 U.S. at 300 n.3; *West*, 311 U.S. at 237.

 To the extent that petitioner's speedy-trial claim is premised on federal law, petitioner has failed to establish a violation of his federal speedy-trial rights for the reasons previously stated in considering Ground One.

 After review of the record in this case, the Court finds that the Ohio Court of Appeals' decision denying petitioner's claim alleging ineffective assistance of trial counsel was neither contrary to nor an unreasonable application of federal law. The appellate court correctly identified *Strickland* as the controlling Supreme Court precedent (Doc. 6, Ex. 22, at PageID 149)

and reasonably determined that appellate counsel was not ineffective for failing to raise the underlying speedy-trial claim because the claim lacked merit and petitioner was not prejudiced by counsel's failure to raise such a claim.

Nor is petitioner entitled to relief on the second sub-claim in Ground Two. In general, fines or restitution orders fall outside the scope of habeas review because they do not satisfy the "in custody" requirement of a cognizable habeas claim. *See, e.g., Washington v. McQuiggin*, 529 F. App'x 766, 772 (6th Cir. 2013) (explaining that "fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the 'in custody' requirement of a cognizable habeas claim") (citing cases). As such, petitioner's claims related to counsel's failure to pursue relief from fines at sentencing are not cognizable in this habeas proceeding.

Ground Two does not warrant habeas corpus relief.

**C. Ground Three Should Be Denied.**

In his Third Ground, petitioner asserts that his "conviction was not supported by sufficient credible evidence and was against the manifest weight of the evidence." (Doc. 1, at PageID 8-9). Although petitioner does not expressly state which of his convictions he is challenging, the Court understands Ground Three to mirror petitioner's argument on direct appeal that his second-degree trafficking-in-heroin conviction was supported by insufficient evidence and against the weight of the evidence. (*See* Doc. 1, at PageID 9) (checking box indicating that petitioner raised Ground Three on direct appeal). Respondent argues that petitioner procedurally defaulted Ground Three, as so construed,[3] by failing to present it to the

---

[3]To the extent petitioner seeks in Ground Three to raise sufficiency-of-the-evidence and manifest-weight challenges to his remaining heroin-trafficking convictions, such claims were not raised on direct appeal and are now procedurally defaulted. *See, e.g., Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998) (finding that the doctrine of

Ohio Supreme Court and, alternatively, that Ground Three fails on the merits. Without deciding the procedural issue, *see Mahdi*, 522 F.3d at 635, the undersigned recommends denying Ground Three on the merits.

Because habeas review is limited to claims implicating federal concerns, the Court lacks jurisdiction to consider petitioner's claim to the extent he contends the trial court's verdict of guilty on the second-degree heroin-trafficking charge was against the manifest weight of the evidence. Such a claim is based on a state-law concept that is "both quantitatively and qualitatively different" from federal due process sufficiency-of-evidence principles. *See Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 678 N.E.2d 541, 546-48 (Ohio 1997).[4] Because the claim challenging the weight of the evidence thus raises issues of state-law only, it does not constitute a cognizable ground for relief subject to review in this federal habeas corpus proceeding.

The Court's review, therefore, is limited solely to consideration of petitioner's claim challenging the sufficiency of evidence that was presented at trial to establish his guilt beyond a reasonable doubt on the second-degree heroin-trafficking charge.

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing petitioner's constitutional sufficiency-of-evidence claim on direct appeal. The court

---

*res judicata* applies to constitutional claims that could have been raised in a direct appeal) (citing *State v. Combs*, 652 N.E.2d 205, 209 (Ohio App. 1994)). Further, petitioner has failed to assert any cause for the procedural default of those claims. Nor has petitioner provided a factual basis for such an expanded reading of Ground Three in either his petition or his traverse. *See* Rule 2(c) of the Rules Governing Section 2254 Cases (providing that a habeas petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground").

[4]It is noted that *Thompkins* was superseded on other grounds by a state constitutional amendment allowing for state supreme court review of manifest-weight-of-the-evidence claims in death penalty cases. *See State v. Smith*, 684 N.E.2d 668, 683-84 & n.4 (Ohio 1997).

considered the claim in conjunction with petitioner's state-law claim challenging the weight of

the evidence. The court rejected both assignments of error, reasoning in pertinent part as follows

with respect to the constitutional issue:

> {¶ 41} Smith was convicted of trafficking in heroin for the 16 grams of that controlled substance found in the shed on Yapp's property. R.C. 2925.03(A)(2) provides that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute [heroin], when the offender knows or has reasonable cause to believe that the [heroin] is intended for sale or resale by the offender or another person."

> {¶ 42} The state introduced evidence that: (1) its confidential informant made four controlled heroin purchases from Smith in Yapp's residence in early September 2015; (2) during the fourth controlled heroin purchase, Smith took a plastic baggie containing heroin out of a Backwoods tobacco package; (3) the state executed a warrant and searched Yapp's residence and property a couple days after the fourth heroin purchase and found plastic baggies containing drugs, including one containing about 16 grams of heroin, inside Backwoods tobacco pouches in a shed on Yapp's property; and (4) Smith sold drugs, including heroin, out of Yapp's house, and directed Yapp to hide his heroin supply in an electrical bag in a shed on his property.

> {¶ 43} Smith attempts to discredit Yapp's testimony at trial because: Yapp was a known drug dealer and addict; Yapp initially kept quiet about the drugs in the shed on his property because he wanted the drugs for his personal use; and Yapp had a key to the locked shed that he kept in his bedroom. But the jury was free to credit the state's evidence, including Yapp's testimony that the heroin in the shed was Smith's and that Smith had it stored there as his supply to sell. *Reyes–Rosales*, at ¶ 17.

> {¶ 44} After viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of this trafficking in heroin conviction proven beyond a reasonable doubt.

(Doc. 6, Ex. 22, at PageID 159-60).

The well-settled standard of review for evaluating the merits of constitutional claims

challenging the sufficiency of the evidence was established by the Supreme Court in *Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979). As the Supreme Court held in *Jackson*, because the Due

Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, *In Re Winship*, 397 U.S. 358, 363-64 (1970), "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

Under the *Jackson* standard, the State is not required to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson*, 443 U.S. at 319. Consequently, the reviewing court is not permitted to reweigh the evidence, reevaluate the credibility of witnesses, make its own subjective determination of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318-19 & n.13; *see also United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)); *York v. Tate*, 858 F.2d 322, 329 (6th Cir. 1988) (per curiam).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish*, 543 F.3d 793, 796 (6th Cir. 2008) (quoting *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000)); *see also Fisher*, 648 F.3d at 450. Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a

reasonable *speculation* that the petitioner is guilty of the charged crime. *Newman,* 543 F.3d at

796-97 (and Sixth Circuit cases cited therein).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is

even further limited. As the Sixth Circuit explained in *Brown,* 567 F.3d at 205, the federal

habeas court is "bound by two layers of deference to groups who might view facts differently

than [the habeas court] would." The federal habeas court must defer not only to the trier of fact's

findings as required by *Jackson,* but under 28 U.S.C. § 2254(d), must also "defer to the *state*

*appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in

original); *see also Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011); *Anderson v. Trombley,* 451

F. App'x 469, 474-75 (6th Cir. 2011). Therefore, as the Sixth Circuit went on to emphasize in

*Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what
> evidentiary showings would be sufficient to convince us of the petitioner's guilt.
> We cannot even inquire whether *any* rational trier of fact would conclude that
> petitioner . . . is guilty of the offenses for which he was charged. Instead, we must
> determine whether the Ohio Court of Appeals itself was unreasonable in *its*
> conclusion that a rational trier of fact could find [the petitioner] guilty beyond a
> reasonable doubt based on the evidence introduced at trial.

*Brown,* 567 F.3d at 205 (emphasis in original).

Applying the double-layer deferential standard to the case-at-hand, the undersigned

is convinced that the Ohio Court of Appeals' sufficiency determination is neither contrary

to nor an unreasonable application of *Jackson.* William Yapp, a witness for the State,

testified that during the period of July 2015 through September 10, 2015, he observed

petitioner selling heroin from Yapp's residence, where petitioner was staying,

approximately ten to fifteen times a day. (Doc. 6-1, Transcript, at PageID 438). Yapp

further testified that petitioner "brought [the heroin] in" to Yapp's residence (Doc. 6-1, Transcript, at PageID 438) and directed Yapp "to put [the heroin] out, in the out building or underneath a car or something" (Doc. 6-1, Transcript, at PageID 439-40). Further, Yapp testified that the heroin in the Backwoods tobacco package belonged to petitioner. (Doc. 6-1, Transcript, at PageID 441).

Contrary to petitioner's assertion, his second-degree heroin-trafficking conviction was not based on mere speculation. The jury heard testimony from which they could rationally infer that petitioner "[p]repare[d] for shipment, ship[ped], transport[ed], deliver[ed], prepare[d] for distribution, or distribute[d]" the heroin in the shed "know[ing] or ha[ving] reasonable cause to believe that the [heroin] [was] intended for sale or resale by [petitioner] or another person." Ohio Rev. Code § 2925.03(A)(2). Although petitioner attempts to call into question the credibility of Yapp's testimony, the Court cannot evaluate the credibility of the witnesses because that is the jury's function. *See, e.g.*, *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996) (when conducting a sufficiency of the evidence review, a court must "refrain from independently judging the credibility of witnesses or weight of the evidence") (citing, *inter alia*, *Jackson*, supra).

Ground Three does not warrant habeas corpus relief.

Accordingly, in sum, this Court concludes that petitioner is not entitled to federal habeas corpus relief based on the grounds asserted in his petition.

### IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in the petition, which has been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 7/1/19

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARK SMITH,                                        Case No. 1:18-cv-335
      Petitioner,

                                     Barrett, J.
vs.                                                Litkovitz, M.J.

WARDEN, PICKAWAY
CORRECTIONAL INSTITUTION,
      Respondent.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.   Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.   If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.   A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.   Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).